### UNITED STATES DISTRICT COURT
### DISTRICT OF NEW JERSEY

---

WILLIAM J.-P.,

        Plaintiff,

   v.

KILOLO KIJAKAZI, *Acting Commissioner of Social Security*,

        Defendants.

No. 20-18081

**OPINION**

---

<u>**APPEARANCES**</u>:

Kathryne H. Pope
HOFFMAN DIMUZIO
25 Hunter Street
P.O. Box 7
Woodbury, New Jersey 08096

    *On behalf of Plaintiff.*

Rachel A. Honig
Acting United States Attorney
U.S. DEPARTMENT OF JUSTICE
   OFFICE OF THE U.S. ATTORNEY
401 Market Street
P.O. Box 2098
Camden, NJ 08101

Roxanne Andrews
SOCIAL SECURITY ADMINISTRATION
   OFFICE OF THE GENERAL COUNSEL
P.O. Box 41777
Philadelphia, PA 19101

    *On behalf of Defendant.*

**O'HEARN, District Judge.**

This matter comes before the Court on an Appeal by Plaintiff William J.-P.[1] ("Plaintiff") from a denial of Social Security disability benefits by the Acting Commissioner of Social Security ("Defendant"). The Court did not hear oral argument pursuant to Local Rule 9.1(f). For the reasons that follow, the Court **AFFIRMS** the Acting Commissioner's decision.

## I.     BACKGROUND

The Court recites herein only those facts necessary for its determination on this Appeal.

### A. Administrative History

On February 16, 2018, Plaintiff protectively filed a Title II application for a period of disability and disability insurance benefits, alleging disability beginning October 14, 2017. (AR 20). The claim was denied initially on June 13, 2018, and upon reconsideration on September 12, 2018. (AR 20). Plaintiff filed a request for a hearing on October 2, 2018. (AR 10). Plaintiff appeared in person for a hearing in Pennsauken, New Jersey, on April 10, 2019, accompanied by counsel. (AR 20). After the hearing, the Administrative Law Judge ("ALJ") found that Plaintiff was not disabled in a decision dated December 20, 2019. (AR 17). The Appeals Council denied his request for review on October 19, 2020. (AR 1). This Appeal followed. (Compl., ECF No. 1).

### B. Plaintiff's Background and Testimony

Plaintiff is 60 years of age. (AR 47). Plaintiff has at least a high school education and is able to communicate in English. (AR 35, 48–49). Plaintiff is 6 foot tall and weighs 260 pounds. (AR 48). Plaintiff is married with two children and lives with his wife. (AR 47). Plaintiff's son was tragically killed in a car accident. (AR 47). At the time of his hearing, Plaintiff was working

---

[1]  Pursuant to this Court's Standing Order 2021-10, this Opinion will refer to Plaintiff solely by his first name and last initial.

part-time at McDonald's Restaurant for approximately one year, working twenty-five to thirty hours per week cooking and prepping foods. (AR 49–50, 52–53).[2] Plaintiff testified that he takes a break and gets off his feet every hour to collect himself and due to dizziness and fatigue. (AR 50, 65–67). He called out sick at times when his depression was overwhelming. (AR 67). Plaintiff previously worked full-time at McDonald's, from 2011 until the Fall of 2017. (AR 51–52). At that time, Plaintiff resigned because he was having "a lot of medical issues. And, with the passing of [his] son so suddenly . . . everything was too much" for him. (AR 51). Plaintiff described having panic attacks approximately ten times per day for fifteen minutes during which his heart races, he has palpitations, has sweaty hands and palms, and becomes lightheaded and dizzy. (AR 69–70).

Plaintiff was previously employed as a warehouse worker. (AR 53–54).

Plaintiff testified that since October 2017 he has been unable to work. (AR 55). Plaintiff testified for the past thirty-one years he had been dealing with hypertension, for which he takes four medications a day, and that his symptoms have become worse. (AR 55). Plaintiff testified that he has been treated for diabetes for the past thirteen years, for which he takes three medications a day, and that he has lost a lot of his stamina. (AR 55). Plaintiff believes that these medical conditions have caused him to deteriorate. (AR 55).

Plaintiff testified, however, that "the biggest thing of all . . . was my son was killed—when he was only 20 years old—right around the corner from home, in a car accident. And I've been suffering with depression and anxiety." (AR 55). Plaintiff described being at his son's bedside and watching him die. (AR 56). Plaintiff testified that after more than two years, he was still in disbelief

---

[2]  The ALJ determined that there was persuasive evidence that Plaintiff had not engaged in substantial gainful activity from the alleged onset date of disability through March 31, 2019 and there was insufficient evidence to make a specific determination as to what month(s) the Plaintiff may have engaged in gainful activity after April 1, 2019. (AR 22–23).

and that every day all he does is wake up thinking about him. (AR 56). Plaintiff attends therapy bi-weekly. (AR 56–58). Plaintiff testified that each night he spends forty minutes performing a ritual where he goes all through his house looking at different pictures of his son, touching things and talking to his son. (AR 70–71). He has difficulty sleeping and wakes up four to five times per night. (AR 71).

Plaintiff initially returned to work in August 2017 after his son's death, however, he testified he "just couldn't do it anymore", that he was "breaking down, crying in the bathroom," that he "had no energy, no stamina," and "was just a shell of myself." (AR 56). Thus, he resigned after six weeks. (AR 56–57, 71–72). Plaintiff testified that he returned to work because of financial difficulties and that he could not work full-time. (AR 73).

Plaintiff also testified regarding phobias and anxiety related to driving that he has had for the past fifteen to sixteen years and specifically, that he had a "problem" driving over bridges or more than a one-mile radius from home. (AR 58, 68). Plaintiff described having panic attacks and a claustrophobic feeling with palpitations that worsened to the point where he refrains from driving on bridges or highways and has not done so in about twelve years. (AR 68–69).

Plaintiff testified that he has neuropathy and suffers from constant pain, specifically, burning and tingling in his feet and legs, due to his diabetes that makes it hard for him to maneuver around. (AR 58). He testified he has difficulty bending and walking and that his feet get numb after he is on his feet for about an hour which causes him to need to sit down. (AR 58–59).

In total, Plaintiff takes nine medications per day – four for hypertension, three for diabetes and two for anxiety and depression. (AR 59). Plaintiff testified he suffers side effects from the medications including dizziness and lightheadedness. (AR 59).

Plaintiff testified he could probably lift "up to 40 pounds or so" and "comfortably, 25

pounds . . . at the most," (AR 60); that he can walk with his dog for seven to eight minutes, (AR 60); he can stand in one place for about one hour, (AR 60); and he can sit for about a half hour to forty-five minutes, (AR 60). Plaintiff testified that he can "cook a little bit," can empty the dishwasher, and spends most of his time watching TV and reading the paper. (AR 60). Plaintiff does, however, drive himself to the local supermarket approximately one-half mile from his home to shop and drives himself to doctor's appointments every two weeks. (AR 61, 63). He also pays household bills with his wife. (AR 61–62). He is able to shower and dress independently. (AR 62).

Plaintiff has never used a computer. (AR 62, 65). In terms of his social skills, Plaintiff testified he did not have any friends and that his interactions with others when he shops at the grocery store was "a comfortable situation." (AR 62–63).

### C. Medical History

Plaintiff has been examined by numerous medical professionals over the course of the last decade and throughout the pendency of her disability claim. The Court will briefly summarize the relevant medical evidence for purposes of this Appeal. This recitation is not comprehensive.

#### 1. Physical Impairments

Plaintiff saw orthopedist Fred McAlpin, D.O., for complaints of left shoulder pain on July 20, 2017. (AR 313). X-rays and a CT scan showed no fractures, dislocations, or significant internal derangement. (AR 311, 313). After an evaluation, Dr. McAlpin noted that Plaintiff's left shoulder revealed mild pain at the end ranges of forward flexion and external rotation, a positive O'Brien's test (a test for labral tears), slight discomfort with a Hawkin's test (a test for shoulder impingement), a negative Yargason's test (a test for pathology of the biceps tendon), and a positive impingement sign. (AR 313). Treatment was an injection of DepoMedrol to Plaintiff's left shoulder, and a referral for additional diagnostic studies. (AR 313).

Plaintiff saw Debby Frazier, APN, at Woolwich Family Medicine for follow up of his diabetes on September 11, 2017, and for completion of paperwork related to his disability application on April 17, 2018. (AR 317, 324). Treatment notes show Plaintiff had a BMI of 35.07 and denied any fatigue, fever, chills, weight loss, joint pain, swelling, stiffness, or weakness. (AR 317). Nurse Frazier reported that Plaintiff was well-oriented with 5/5 strength, a normal gait, stable hypertension, and intact deep tendon reflexes. (AR 317). In his second visit, Plaintiff denied any physical complaints but reported emotional distress over his son's death. (AR 324–25). In a follow up with Nurse Frazier on April 5, 2019, Plaintiff's physical examination was normal and he denied any complaints. (AR 363, 368).

Samuel Sarmiento, M.D., conducted a consultative physical examination on Plaintiff, diagnosing him with diabetes mellitus and hypertension on May 21, 2018. (AR 332, 336). Plaintiff was six feet tall, weighed 271 pounds, and his blood pressure was 170/90. (AR 333). Plaintiff self-reported that he was diagnosed with diabetes in 2006, and hypertension in 1988, but denied a history of emergency room visits or hospitalizations for either. (AR 332). He treated his conditions with Lorsartan, Metoprolol, Norvasc, Glimepiride, Pravastin, Lexapro, Xanax, Metformin, and an Albuterol Inhaler. (AR 333).

Dr. Sarmiento noted that Plaintiff had decreased range of motion in his upper extremities but 5/5 pinch strength, grip strength, and muscle strength, normal gait. (AR 334–35, 338). On a mental status examination Plaintiff was alert, well oriented, and cooperative; he was able to answer all questions without difficulty; his mood, affect, and concentration were normal; his thought process and content were unremarkable; and his short-term and long-term memory were intact. (AR 335). Dr. Sarmiento opined that Plaintiff had no limitations with regard to balancing, using his hands, standing, walking, or sitting, with "reasonable breaks." (AR 336).

Plaintiff saw Jodi Fox Mellul, M.D., on July 9, 2019, for an endocrinology consultation at Mullica Hill Endocrinology. (AR 345). Plaintiff sought consult on his hypertension, shoulder pain, and type 2 diabetes. (AR 347). Dr. Fox Mellul, reported normal physical examination findings, Plaintiff was alert and cooperative and his diabetic foot examination was normal. (AR 346–47). Dr. Fox Mellul advised Plaintiff to increase his dosage of Metformin and engage in diet and lifestyle modifications including weight loss and exercise. (AR 345).

Progress notes from follow ups with Dr. Fox Mellul show Plaintiff's improved conditions. On August 21, 2018, Plaintiff reported that his blood glucose was "much improved," his diet was better, he had not had any hypoglycemia and had lost a few pounds. (AR 376). Dr. Fox Mellul reported on January 21, 2019, that Plaintiff's diabetes was stable and "much better." (AR 378). Dr. Fox Mellul noted in an examination on June 3, 2019, Plaintiff's diabetes "stable." (AR 381–82).

### 2. Mental Impairments

Plaintiff was treated by therapist Marie Poloney, LCSW, in biweekly sessions since August 2017. (AR 348). She diagnosed Plaintiff with generalized anxiety disorder and major depressive disorder. (AR 327, 348). Ms. Poloney opined that Plaintiff's prognosis was "good," he had "unlimited or very good" ability to understand, remember, and carry out very short and simple instructions; maintain attendance and be punctual; sustain an ordinary routine; work in coordination with or proximity to others; ask questions or request assistance; accept instructions and respond appropriately to criticism; get along with coworkers; interact appropriately with the general public; adhere to basic standards of neatness and cleanliness; use public transportation; respond appropriately to changes in a routine work setting; and be aware of hazards and take appropriate precautions. (AR 348, 350–51). She opined that Plaintiff had a "limited but

satisfactory" ability to make simple work-related decisions and deal with normal work stress, (AR 350), but was seriously limited in his ability to remember work-like procedures; complete a normal work day and work week without interruptions from psychologically based symptoms; interact with others; concentrate, persist, or maintain pace; adapt or manage himself; maintain socially appropriate behavior; and travel in unfamiliar places. (AR 350–51). She opined that he would be "unable to meet competitive standards" in maintaining attention for two-hour segments and performing at a consistent pace without an unreasonable number and length of rest periods. (AR 350). Ms. Poloney opined that Plaintiff had no restriction of activities of daily living; marked difficulties in maintaining social functioning; moderate difficulties in maintaining concentration, persistence, or pace; and one or two episodes of decompensation within a 12-month period, each of at least two weeks' duration. (AR 352).

Plaintiff saw Lawrence G. Mintzer, Ph.D., for a consultative psychological evaluation on May 14, 2018. (AR 326). Dr. Mintzer diagnosed Plaintiff with major depressive disorder, single episode, severe, and unspecified anxiety disorder. (AR 329). Exam notes show that plaintiff reported having no energy, depressed feelings, and anxiety that caused him to feel weak, dizzy, and lightheaded. (AR 327). He told Dr. Mintzer that he quit his job at McDonald's in October 2017 because of difficulty coping with the grief of his son's death. (AR 326).

Dr. Mintzer's examination revealed that Plaintiff was well oriented, relaxed, appropriate, and he seemed somewhat depressed with a mildly constricted affect. (AR 328). Plaintiff's thought processes were goal-directed, his speech was coherent, and there were no indications of delusional thinking or suicidal/homicidal ideation. (AR 328). Plaintiff's abstract thinking, fund of general knowledge, capacity to perform simple calculations, memory, impulse control, insight, and concentration were good. (AR 328). His immediate retention, recall, and social judgment were

fair. (AR 328).

**D.  The ALJ's Decision**

The ALJ followed the five-step sequential evaluation process for determining disability claims and determined that Plaintiff was not disabled, as defined by the SSA from October 14, 2017 through the date of the decision (20 CFR 404.1520(g)). (AR 22). First, the ALJ  found Plaintiff had not engaged in substantial gainful activity since October 14, 2017. (AR 22–23). Second, the ALJ found that the Plaintiff had the following severe impairments:  major depressive disorder and anxiety disorder, (20 CFR 404.1520(c)), that significantly limit the Plaintiff's ability to perform basic work activities as required by SSR 85–28. (AR 23–24). Under the totality of the evidence, the ALJ found that Plaintiff's hypertension, type II diabetes, and obesity have no more than minimally impaired his ability to perform work activities over any period of at least twelve consecutive months since the date of alleged onset of disability. (AR 24). Thus, the ALJ found these impairments to be non-severe. (AR 24). The ALJ then determined that the Plaintiff did not have an impairment or combination of impairments that meet or medically equal the following sections of the listed impairments:  12.04 – depressive, bipolar and related disorders; and 12.06 – anxiety and obsessive-compulsive disorders. (AR 25).

Third, after consideration of the entire record, the ALJ determined that Plaintiff had a residual functional capacity to perform a full range of work at all exertional levels, provided that Plaintiff never climb ladders, ropes, or scaffolds, and avoids concentrated exposure to hazards such as dangerous machinery and unprotected heights. (AR 28).

Fourth, the ALJ found that Plaintiff was unable to perform any past relevant work, (20 CFR 404.1565), and, fifth, relying on the testimony of a vocational expert, Mark Pinti, ("VE"), further determined that there were jobs that existed in significant numbers in the national economy that

the Plaintiff can perform, (20 CFR 404.1569 and 404.1569(a)). (AR 35).

## III.    LEGAL STANDARD

When reviewing a final decision of an ALJ regarding a claimant's disability benefits, a court must uphold the ALJ's factual decisions if they are supported by "substantial evidence." *Knepp v. Apfel*, 204 F.3d 78, 83 (3d Cir. 2000); 42 U.S.C. §§ 405(g), 1383(c)(3). "Substantial evidence" means "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Cons. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *Plummer v. Apfel*, 186 F.3d 422, 427 (3d Cir. 1999).

In addition to the "substantial evidence" inquiry, the court must also determine whether the ALJ applied the correct legal standards. *See Friedberg v. Schweiker*, 721 F.2d 445, 447 (3d Cir. 1983); *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000). The court's review of legal issues is plenary. *Sykes*, 228 F.3d at 262 (citing *Schaudeck v. Comm' r of Soc. Sec.*, 181 F.3d 429, 431 (3d Cir. 1999)).

The Social Security Act defines "disability" as the inability "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). The Act further states,

> [A]n individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy, regardless of whether such work exists in the immediate area in which he lives, or whether a specific job vacancy exists for him, or whether he would be hired if he applied for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner of the Social Security Administration has promulgated a five-step, sequential analysis for evaluating a claimant's disability, as outlined in 20 C.F.R. §§ 404.1520(a)(4)(i)–(v). The analysis proceeds as follows:

> At step one, the ALJ determines whether the claimant is performing "substantial gainful activity[.]" If he is, he is not disabled. Otherwise, the ALJ moves on to step two.
>
> At step two, the ALJ considers whether the claimant has any "severe medically determinable physical or mental impairment" that meets certain regulatory requirements. A "severe impairment" is one that "significantly limits [the claimant's] physical or mental ability to do basic work activities[.]" If the claimant lacks such an impairment, he is not disabled. If he has such an impairment, the ALJ moves on to step three.
>
> At step three, the ALJ decides "whether the claimant's impairments meet or equal the requirements of an impairment listed in the regulations[.]" If the claimant's impairments do, he is disabled. If they do not, the ALJ moves on to step four.
>
> At step four, the ALJ assesses the claimant's "residual functional capacity" ("RFC") and whether he can perform his "past relevant work." A claimant's "[RFC] is the most [he] can still do despite [his] limitations." If the claimant can perform his past relevant work despite his limitations, he is not disabled. If he cannot, the ALJ moves on to step five.
>
> At step five, the ALJ examines whether the claimant "can make an adjustment to other work[,]" considering his "[RFC,] . . . age, education, and work experience[.]" That examination typically involves "one or more hypothetical questions posed by the ALJ to [a] vocational expert." If the claimant can make an adjustment to other work, he is not disabled. If he cannot, he is disabled.

*Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 201–02 (3d Cir. 2019) (alterations in original; citations and footnote omitted).

## II.   __DISCUSSION__

In his Appeal, Plaintiff identifies three alleged errors by the ALJ. First, Plaintiff argues that the ALJ erred in finding that Plaintiff's hypertension, type II diabetes and obesity were not severe in the Step Two analysis and further failed to include proper limitations of those conditions in the RFC determination. Next, Plaintiff alleges that the ALJ failed to consider opinion evidence in the

record. Finally, Plaintiff alleges that the ALJ failed to address Plaintiff's left shoulder impingement. The Court will address each of these arguments in turn. For the reasons that follow, the Court affirms the ALJ's decision.

### A. Plaintiff's Hypertension, Type II Diabetes, And Obesity And The RFC Determination

Plaintiff argues that the ALJ erred in finding that Plaintiff's hypertension, type II diabetes and obesity were not severe in the Step Two analysis. (Pla. Br. at 18–23). To begin, ALJs' Step Two analyses need not exhaustively address every condition from which a claimant may suffer that could arise to a severe impairment, as Step Two is merely a "*de minimis* screening device" used to "dispose of groundless claims." *Newell v. Comm'r of Soc. Sec.*, 347 F.3d 541, 546 (3d Cir. 2003). Because the ALJ in this case found that Plaintiff suffers from severe impairments, any failure to address other potentially severe impairments is, at worst, harmless error. *Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007). Put differently, the ALJ found *in Plaintiff's favor* at Step Two, so his challenge to the ALJ's findings at that stage is misplaced. *See Auriemma v. Colvin*, No. 13-5947, 2015 WL 5097902, at *6 (D.N.J. Aug. 31, 2015) (*citing Salles v. Comm'r of Soc. Sec.*, 229 F. App'x 140, 145 n.2 (3d Cir. 2007) ("Because the ALJ found in [Plaintiff]'s favor at Step Two, even if he had erroneously concluded that some of h[is] other impairments were non-severe, any error was harmless).

Plaintiff's argument that the ALJ failed to incorporate limitations related to his hypertension, type II diabetes and obesity fares no better. ALJs formulate claimants' RFCs based on all the relevant evidence, including the medical records, medical source opinions, and claimants' allegations and description of their limitations. 20 C.F.R. §§ 404.1545(a), 404.1546(c) (2021). Claimants have the burden of presenting evidence that they do not have the RFC to perform any substantial gainful activity. *See* 42 U.S.C. § 423(d)(5)(A); 20 C.F.R. § 404.1545(a)(3) (2021);

*Poulos v. Comm'r of Soc. Sec.*, 474 F.3d 88, 92 (3d Cir. 2007) ("The claimant bears the ultimate burden of establishing steps one through four.").

Although obesity was removed as a "listed impairment" in 1999, the Third Circuit has recognized that this removal "did not eliminate obesity as a cause of disability." *Diaz v. Comm'r of Soc. Sec.*, 577 F.3d 500, 503 (3d Cir. 2009) (citing SSR 00–3p, 65 Fed. Reg. 31039, 31040–42 (May 15, 2000)). When "the Commissioner promulgated SSR 00-3p, indicating how obesity is to be considered[,] [it] replaced an automatic designation of obesity as a listed impairment, based on a claimant's height and weight, with an individualized inquiry, focused on the combined effect of obesity and other severe impairments afflicting the claimant[.]" *Id*. "Although SSR 00-3p was superseded by SSR 02-1p, 67 Fed. Reg. 57859, 57859 (Sept. 12, 2002), SSR 02-1p did not materially amend SSR 00-3p." *Id. (citations omitted); see also* SSR 00-3p, 65 Fed. Reg. 31039-01 (May 15, 2000) ("[O]besity may increase the severity of coexisting or related impairments to the extent that the combination of impairments meets the requirements of a Listing. This is especially true of musculoskeletal, respiratory, and cardiovascular impairments. It may also be true for other coexisting or related impairments, including mental disorders."). Importantly, claimants must show "*how* [their] obesity . . . affect[s their] ability to perform basic work activities," not merely that it *could*. *Carter v. Comm'r Soc. Sec.*, 805 F. App'x 140, 143 (3d Cir. 2020) (emphasis in original); *Santini v. Comm'r of Soc. Sec.*, 413 F. App'x 517, 520 (3d Cir. 2011) ("the ALJ's finding is supported by substantial evidence, as [plaintiff] failed to provide any medical evidence indicating that her obesity has a significant effect on her functional capacity").

Accordingly, "an ALJ must meaningfully consider the effect of a claimant's obesity, individually and in combination with her impairments, on her workplace function at step three and at every subsequent step." *Diaz*, 577 F.3d at 504. "For meaningful judicial review, the ALJ must

provide a discussion of the evidence and an explanation of reasoning, . . . but we do not 'require the ALJ to use particular language or adhere to a particular format in conducting his analysis[.]'" *Woodson v. Comm'r Soc. Sec.*, 661 F. App'x 762, 765–66 (3d Cir. 2016) (*quoting Jones*, 364 F.3d at 505). "As with any other impairment, [the ALJ] shall explain how [they] reached [their] conclusion on whether obesity causes any limitations." SSR 19-2p. Remand on the sole ground to reconsider obesity, however, is only required when it would affect the outcome of the case, 25 *Rutherford v. Barnhart*, 399 F.3d 546, 552–53 (3d Cir. 2005); *cf. Demiranda v. Barnhart*, No. Civ. A. 04–4199, 2005 WL 1592950, at *1–2 (E.D. Pa. July 05, 2005) (remanding because obesity affected her ability to work, and limited her ability to function).

First, Plaintiff's argument that the ALJ failed to consider hypertension or diabetes in the RFC lacks merit. The ALJ expressly considered Plaintiff's non-severe impairments of diabetes and hypertension including Plaintiff's testimony and the record. (AR 32–34). Specifically, the ALJ noted that Dr. Sarmiento found Plaintiff had no physical limitations. (AR 32). The ALJ explained his reasonings for his findings and further cited to specific medical records upon which he relied. (AR 32–34). The ALJ further considered Plaintiff's complaints of dizziness and fatigue as side effects of his medications in setting these above stated limitations. (AR 25). As such, there is substantial evidence in the record to support the ALJ's determinations as to these two conditions.

Turning to obesity, a more detailed review is necessary. The ALJ specifically found that "the effects of the claimant's non-severe obesity cause no signification exacerbations of his remaining impairments that would warrant an alternate finding at this step of three analysis." (AR 28). When addressing the RFC, the ALJ stated,

> . . . the undersigned has considered all of the claimant's medically determinable impairments at the remaining steps of the disability determination process, regardless of their severity. In particular, the undersigned has accounted for the claimant's recurring obesity with residual functional capacity limitations to never climbing ladders, ropes or

14

scaffolds and avoiding concentrated exposure to hazards such as dangerous machinery and unprotected heights.

(AR 24).

While these statements display that the ALJ did consider obesity and its impact on other conditions, they are conclusory and do not explain the ALJ's decision in a way that would aid the Court in meaningfully reviewing the decision. *See* SSR 19-2p; *see generally Woodson*, 661 F. App'x at 765–66. Despite this, remand is not appropriate as it would not change the outcome of the case. *See Rutherford*, 399 F.3d at 552–53. First, Plaintiff has not presented any objective medical evidence to meet his burden of showing how his obesity *actually impacted* his work, as opposed to merely showing that he has obesity and also struggles to work. *See Carter*, 805 F. App'x at 143. No doctor has opined that Plaintiff's obesity limited his ability to function, nor does any objective medical evidence before the ALJ indicate same.

Second, the same is true for the consideration of Plaintiff's obesity in combination with other ailments. The Court finds the absence of discussion around the relationship between Plaintiff's depression—which the ALJ found to be severe—and his complaints of obesity particularly troublesome as depression is expressly listed in SSR 19-2p as a condition that can be associated with obesity. However, the Court again notes that the administrative record contains no indication from any medical professional indicating that Plaintiff's obesity created any limitation or contributed to any of his other conditions, including his depression.

The Court is not persuaded by Plaintiff's technical argument that his case must be remanded because obesity was not fully considered. The Third Circuit foreclosed this precise argument in its decision in *Rutherford v. Barnhart*, 399 F.3d 546 (3d. Cir. 2005). In *Rutherford*, the plaintiff argued that remand was appropriate due to the ALJ's lack of discussion regarding obesity. *Id.* at 552. The plaintiff pointed out that her obesity was apparent in the record, even if she

15

did not expressly claim it as an impairment. *Id.* The Third Circuit held that remand was not required as it would not affect the outcome of the case considering the plaintiff "ha[d] not specified how [her obesity] would affect the five-step analysis undertaken by the ALJ, beyond an assertion that her weight makes it more difficult for her to stand, walk and manipulate her hands and fingers." *Id.* at 553. While Plaintiff here did allege obesity as an ailment, the Court nevertheless finds *Ruterford* analogous since Plaintiff's obesity was found to be non-severe and is sparsely referenced throughout the medical evidence. (RA 24).

Another decision coming to the opposite result as *Rutherford*, *Demiranda v. Barnhart*, 2005 WL 1592950 (E.D. Pa. July 5, 2005), further demonstrates why remand is inappropriate here. The *Demiranda* Court distinguished *Rutherford* and found that the ALJ's consideration of the plaintiff's obesity would have affected the outcome of the case. *Id.* at *1. Significantly, the plaintiff in *Demiranda* was diagnosed with morbid obesity and specifically alleged that her condition adversely impacted her ability to work "because it:  increased her chronic fatigue and pain and contributed to her depression; decreased her mobility because it exacerbated her osteoarthritis; exacerbated her diabetes mellitus and coronary artery disease and put her at risk for recurrent pulmonary embolization; and that it adversely impacted her already impaired cardiovascular system." *Id.* "Finally, and most importantly, several medical records indicate that [the plaintiff's] obesity contributed to her limitations," including, for example, a treating physician's opinion that the plaintiff was *disabled in part due to morbid obesity* and that her mobility was limited due to degenerative osteoarthritis *exacerbated by obesity*. *Id.*

This case is devoid of any of the facts present in *Demiranda*, and thus, falls squarely within the ambit of *Rutherford*. Therefore, the Court finds that consideration of Plaintiff's obesity on remand is not necessary as it would not change the outcome of his case.

### B.  Opinion Evidence

Plaintiff alleges that the ALJ failed to consider opinion evidence in the record. Specifically, Plaintiff alleges that the ALJ's determination that the opinion of Plaintiff's treating medical provider, Marie Poloney, L.C.S.W., was non-persuasive, was unsupported by substantial evidence and was arbitrary and capricious. (Pla. Br. at 24–27). Plaintiff alleges that the ALJ failed to provide sufficient reasoning for dismissing Ms. Poloney's opinions. (Pla. Br. at 24–27). Plaintiff argues that Ms. Poloney's opinion is consistent with other medical records noting Plaintiff's recurrent and intrusive traumatic experience and Plaintiff's testimony. (Pla. Br. at 24–25). The Court again disagrees.

Under 20 C.F.R. § 416.927(c), ALJs are required to weigh and evaluate "every medical opinion." Medical opinions are defined as "statements from acceptable medical sources that reflect judgments about the nature and severity of your impairment(s), including your symptoms, diagnosis and prognosis, what you can still do despite impairment(s), and your physical or mental restrictions." 20 C.F.R. § 416.927(a)(2). Accordingly, any diagnoses, prognoses, and statements about the severity and nature of impairments constitute medical opinions. "[A] reviewing court should not re-weigh the medical opinions of record but should consider only whether the ALJ's weighing of such opinions was supported by substantial evidence." *Hatton v. Comm'r of Soc. Sec. Admin.*, 131 F. App'x 877, 880 (3d Cir. 2005) (citing *Monsour Med. Ctr. v. Heckler*, 806 F.3d 1185, 1190 (3d Cir. 1986)). "The ALJ—not treating or examining physicians or State agency consultants—must make the ultimate disability and RFC determinations." *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 361 (3d Cir. 2011) (citing 20 C.F.R. §§ 404.1527(e)(1), 404.1546(c)).

Plaintiff oversimplifies the ALJ's rationale for his rejection of Ms. Poloney's opinions. Contrary to Plaintiff's allegations, the lack of contemporaneous treatment notes was not the only

reason that the ALJ found Ms. Poloney's opinions non-persuasive. (AR 32–33). The ALJ considered that Ms. Poloney stated she had treated Plaintiff every two weeks but that she had no contemporaneous progress notes and provided a one-page narrative letter report and a form type report. (AR 32, 354, 384). First, while it is true that no specific forms of medical records are required, there is no reason that the ALJ should not consider the detail and nature of records of a provider in deciding what weight to afford them in the analysis. That is what the ALJ did in this case and considering this factor was not error.

Further, the ALJ specifically noted that Ms. Poloney's opinions were "internally inconsistent" in discounting her opinions. (AR 32). Ms. Poloney found Plaintiff to be seriously limited and/or unable to meet competitive standards in his ability to remember work-like procedures, maintain attention for two hours, and perform at a consistent pace without an unreasonable number and length of rest periods. (AR 350). She, however, found him unlimited or very good with respect to many other activities. (AR 350). The ALJ found Ms. Poloney's opinions that Plaintiff had a seriously limited ability to maintain attention for a consistent period of time directly in contrast with her observations that Plaintiff engaged in activities such as driving a vehicle, cooking, and grocery shopping, all activities that require sustained attention and concentration to some extent. (AR 32). In addition, Ms. Poloney's opinions related to Plaintiff being seriously limited in social interactions were contrary to other statements by her that he had unlimited or very good ability to interact with the general public appropriately. (AR 32). Finally, the ALJ noted that Ms. Poloney's one page letter and form letter substantially recommunicated the claimant's self-reporting of an inability to continue working and did not contain medical opinion evidence. (AR 32–34).

For all these reasons, the ALJ provided a reasonable explanation for his conclusion and

determination as to the amount of weight to afford Ms. Poloney's opinions.

### C. Plaintiff's Left Shoulder Impingement

Plaintiff alleges that the ALJ failed to address Plaintiff's left shoulder impingement which was supported by evidence from Premier Orthopedics, with X-rays and examinations of Dr. Fed McAlpin. (Pla. Br. at 27–28). Plaintiff alleges the ALJ should have considered this condition and any limitations reasonably connected to degenerative changes in the left shoulder in the Step Two analysis. (Pla. Br. 27–28). Plaintiff argues this is clear error that requires remand because the ALJ found Plaintiff was capable of performing a full range of work at all levels, including lifting objects more than 100 pounds at a time. (Pla. Br. at 28). The Court again disagrees.

"An ALJ is required to consider impairments a claimant says he has, or about which the ALJ receives evidence." *Rutherford*, 399 F.3d at 552 (citations and quotations omitted). Here, there is no question that while Plaintiff did not claim his shoulder injury to be a disability on his application or during his testimony, there was sufficient evidence in the record to alert the ALJ to Plaintiff's shoulder condition. *Id*. at 552–553. While the Plaintiff is correct that the ALJ did not expressly consider Plaintiff's shoulder injury in any part of his analysis, there is no objective medical evidence in the record that indicates, as Plaintiff now alleges, that his shoulder condition caused him to be restricted in his lifting ability.  Plaintiff testified he could probably lift "up to 40 pounds or so" and "comfortably, 25 pounds . . . at the most" but did not attribute his subjective limitations to his shoulder condition or any particular condition. (AR 60). In his Adult Function Reports he stated he was limited to lifting "30 pounds." (AR 240, 277). However, nowhere in Plaintiff's testimony at his hearing did he even reference any shoulder injury or conditions. (AR 46–73).

While Plaintiff is correct that there is evidence in the record of a shoulder impingement, there is no evidence of any restrictions related thereto. (AR 311, 313, 315-316, 317, 319, 320, 321, 336, 347, 363, 368, 376, 379, 383). Further, evidence in the record contradicts Plaintiff's subjective beliefs as to his lifting abilities. For example, a consultative physician report notes decreased range of motion of the bilateral shoulders, but further notes that "muscle strength of the upper extremities . . . were graded at 5/5 bilaterally" and contained no limitations on lifting. (AR 334–335). The objective medical evidence finding of full motor strength was notably relied upon by the ALJ. (AR 32–33). Thus, while he did not reference the shoulder condition specifically, he did consider Plaintiff's upper body strength. (AR 32–33). Plaintiff produced no contrary evidence that he had any lifting limitations other than his own subjective testimony which is insufficient to controvert the objective medical evidence of having full upper body strength.

"Plaintiff . . . bears the burden, on appeal, of showing not only that the Commissioner erred but also that the error was harmful." *Hill v. Comm'r of Soc. Sec.*, No. 19-20115, 2020 WL 7694007, at *2 (D.N.J. Dec. 24, 2020). The Social Security regulations provide that allegations of pain and other subjective symptoms must be supported by objective medical evidence. 20 C.F.R. § 404.1529(c). There is simply no medical evidence in the record that Plaintiff's shoulder condition caused him to have any limitation in lifting.

For all these reasons, Plaintiff's allegations that the ALJ's failure to address his shoulder impingement was error that requires reversal fails. *See Rutherford*, 399 F.3d at 552–553 (finding no error by ALJ in not considering Plaintiff's obesity where the Plaintiff did not claim his obesity was an impairment in his application or at his hearing and did not specify how it impaired his ability to work but merely speculated it would make it more difficult for him to stand and walk); *Hill*, 2020 WL 7694007, at *2 (rejecting claim that ALJ failed to consider Plaintiff's shoulder

impairments was harmful error where the medical records contained no current limitations or restrictions); *Selman v. Colvin*, No. 15-8575, 2017 WL 1250985, at *9 (D.N.J. Jan. 27, 2017) (finding ALJ did not fail to consider evidence of medical condition where he relied upon clinical examinations which did not reveal functional limitations).

## <u>CONCLUSION</u>

For the foregoing reasons, the Court **AFFIRMS** the final decision of the Acting Commissioner. An appropriate Order will follow.


      */s/ Christine P. O'Hearn*
**CHRISTINE P. O'HEARN**
**United States District Judge**